25CA1353 Peo in Interest of MJ 07-16-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1353
Mesa County District Court No. 23JV9
Honorable Brian J. Flynn, Judge

The People of the State of Colorado,

Appellee,

In the Interest of M.J., a Child,

and Concerning T.J.,

Appellant,

and G.V.,

Appellee.

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE BROWN
Freyre and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 16, 2026

Todd Starr, County Attorney, John Rhoads, Assistant County Attorney, Grand
Junction, Colorado, for Appellee the People of the State of Colorado

Josie Burt, Guardian Ad Litem

Robin Tieman, Office of Respondent Parents' Counsel, Boulder, Colorado, for
Appellant

Patrick R. Henson, Office of Respondent Parents' Counsel, Justin Twardowski,
Office of Respondent Parents' Counsel, Denver, Colorado, for Appellee G.V.

¶ 1    In this dependency and neglect proceeding, T.J. (father) appeals the juvenile court's judgment allocating parental responsibilities for M.J. (the child) to maternal great-aunt and great-uncle (maternal relatives). We affirm.[1]

## I.    Background

¶ 2    The Mesa County Department of Human Services filed a petition in dependency or neglect alleging concerns about neglect, domestic violence, and the child's mother's mental health and substance use. Father resided out of state and had maintained only periodic phone contact with the then-thirteen-month-old child. The Department sought, and was granted, temporary custody and placed the child with the maternal relatives where he remained for the duration of the case.

---

[1] Upon our initial review of the record, we determined that the Department did not fully comply with the Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. §§ 1901-1963, and the then-applicable version of Colorado's ICWA statute, § 19-1-126, C.R.S. 2024. We remanded the case for the juvenile court to direct the Department to comply with the due diligence requirements now set forth in section 19-1.2-107(4)(b), C.R.S. 2025. The Department conducted the required due diligence, and the juvenile court entered an order finding that the child was not an Indian child. The appeal was recertified and is now ripe for resolution.

¶ 3    After father entered a no-fault admission, the juvenile court adjudicated the child dependent or neglected and adopted a treatment plan for father.  Father's treatment plan required him to (1) attend family time to enhance his relationship with the child and demonstrate an ability to understand the child's needs; (2) complete mental health and domestic violence victim assessments and follow all reasonable recommendations; and (3) engage in timely communication with the Department.

¶ 4    Eight months later, the Department filed a motion to terminate father's parental rights.  But after father showed increased engagement with his treatment plan, the court granted the Department's request to continue the termination hearing.  Later, the Department moved to convert the continued termination hearing to an allocation of parental responsibilities (APR) hearing.  Two and a half years after the petition was filed, the juvenile court allocated physical custody and decision-making regarding the child to the maternal relatives and allocated father one weekend of unsupervised family time per month and weekly unsupervised telephone contact.

## II. Discussion

¶ 5 Father argues that the juvenile court erred by allocating parental responsibilities to the maternal relatives because (1) the court's unfitness finding lacked record support; (2) the evidence was insufficient to establish a compelling reason to order an APR to a nonparent; and (3) as a fit parent, he was entitled to the *Troxel* presumption, which the court did not afford him. We discern no reversible error.

### A. Applicable Law and Standard of Review

¶ 6 Generally, a fit parent is presumed to act in the child's best interests. *Troxel v. Granville*, 530 U.S. 57, 68-69 (2000). However, this presumption is overcome by an order adjudicating a child dependent or neglected. *People in Interest of N.G.G.*, 2020 COA 6, ¶ 17. After an adjudication, a parent may regain the *Troxel* presumption if the court finds that the parent complied with their treatment plan and demonstrated an ability to safely parent the child. *Id.* at ¶¶ 18-19. If the parent is entitled to the *Troxel* presumption, it can only be rebutted by clear and convincing evidence that the parent's determination is not in the child's best interests and that the nonparent's request is in the child's best

3

interests.  *Id.* at ¶ 16.  The court must also identify special factors that support entering an order contrary to the parent's wishes.  *Id.*

¶ 7      The Children's Code authorizes a juvenile court to enter an APR when it maintains jurisdiction in a case involving a dependent or neglected child.  § 19-1-104(5)-(6), C.R.S. 2025; *People in Interest of E.Q.*, 2020 COA 118, ¶ 10.  When doing so, a juvenile court must consider the legislative purposes of the Children's Code under section 19-1-102, C.R.S. 2025.  *People in Interest of J.G.*, 2021 COA 47, ¶ 18.  The overriding purpose of the Children's Code is to protect a child's welfare and safety by providing procedures through which the child's best interests can be served.  *Id.* at ¶ 19. Therefore, if a court allocates parental responsibilities, it must do so in accordance with the child's best interests, focusing on the protection and safety of the child and not the parents' custodial interests.  *People in Interest of H.K.W.*, 2017 COA 70, ¶ 13.

¶ 8      A juvenile court may only order permanent custody of a child to a nonparent if the moving party establishes a compelling reason why it is not in the child's best interests to return home.  *People in Interest of C.M.*, 116 P.3d 1278, 1283 (Colo. App. 2005).  A juvenile court need not find that a parent is unfit before it may allocate

4

parental responsibilities to a nonparent, though a parent's unfitness could be a compelling reason not to return the child home. *See People in Interest of M.D.*, 2014 COA 121, ¶¶ 43-44.

¶ 9    The allocation of parental responsibilities is a matter within the juvenile court's sound discretion. *See In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 15. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies or misconstrues the law. *People in Interest of E.B.*, 2022 CO 55, ¶ 14. It is for the juvenile court, as the trier of fact, to determine the sufficiency, probative effect, and weight of the evidence, and to assess the credibility of witnesses. *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010). When the juvenile court's findings have record support, its resolution of conflicting evidence is binding on review. *B.R.D.*, ¶ 15. But whether the court applied the correct legal standard is a question of law that we review de novo. *N.G.G.*, ¶ 10.

### B.    Analysis

¶ 10    First, we reject father's argument that the juvenile court erred by finding him unfit. The court found that, based on father's inconsistent contact with the child and the child's lack of

attachment to him, he was unable to provide for the child's emotional and mental health needs. As a result, the court found father unfit to parent the child. *See* § 19-3-604(2) (describing unfitness as the parent's inability or unwillingness to provide "nurturing and safe parenting sufficiently adequate to meet the child's physical, emotional, and mental health needs and conditions"). The record supports these findings even though, as father points out, there were no safety concerns during his family time, he completed most of his treatment plan objectives, and his home state approved of the child's placement with him through the Interstate Compact on the Placement of Children. *See* §§ 24-60-1801 to -1803, C.R.S. 2023; *People in Interest of O.J.R.*, 2025 COA 78, ¶¶ 18-19 (the 2023 version of the ICPC remains in effect).[2]

¶ 11  At the start of the case, the then-thirteen-month-old child could not crawl or hold his head straight and was "extremely"

---

[2] *People in Interest of O.J.R.*, 2025 COA 78, ¶ 30, which was announced after the termination hearing in this case, now makes clear that the Interstate Compact on the Placement of Children, §§ 24-60-1801 to -1803, C.R.S. 2023, does not apply when a juvenile court grants custody of a child to an out-of-state parent.

speech delayed. While the child made significant progress during the case, the maternal relatives testified that he still had "a lot of needs." And the caseworker described him as having experienced "immense trauma." The Department's expert witness in child therapy described the importance of bonding and attachment to a child's mental health.

¶ 12    But as the caseworker described, father's inconsistent family time engagement and limited in-person contact with the child impeded their attachment. Father only attended half of his virtual family time sessions during the first two years of the case. Father attributed the inconsistency to his work schedule. But the Department changed the family time schedule at least four times during the case to accommodate father's work schedule, and his attendance did not improve. True, father's attendance became more consistent in the four months before the termination hearing, but by that time, the visit schedule had been reduced, at father's request, to one half-hour virtual visit per week. Consequently, as father acknowledged, the child did not know him "all that well."

¶ 13    Additionally, despite the Department's willingness to fund father's travel to Colorado for in-person family time, father did not

see the child in person for the first twenty months of the case. While part of the delay was, understandably, due to father's focus on his critically ill newborn, father's other reasons were that he could not miss work because of his limited time off and his co-workers' health problems. The caseworker expressed concern that father was not prioritizing the child or available to parent him. Thus, the caseworker opined that father was unfit.

¶ 14 In essence, father asks us to reweigh the evidence and substitute our judgment for that of the juvenile court, which we cannot do. *See People in Interest of S.Z.S.*, 2022 COA 133, ¶ 29. Because the juvenile court's unfitness finding is supported by the record, we discern no error. *See id.*

¶ 15 We next reject father's argument that the juvenile court erred by focusing on the need to maintain the child's bond with his siblings as a compelling reason to not allocate custody of the child to father. True, the court found that it was in the child's best interests to remain with his siblings. But the court's unfitness finding alone was sufficient to establish a compelling reason to allocate parental responsibilities to the maternal relatives. *See*

*C.M.*, 116 P.3d at 1283 ("[P]arental unfitness clearly constitutes a compelling reason not to return a child home . . . .").

¶ 16    Finally, father incorrectly asserts that the juvenile court erred by not (1) affording him the *Troxel* presumption; (2) placing the burden on the nonparent to rebut, by clear and convincing evidence, his determination of the child's best interests; and (3) finding special factors before ordering an APR to a nonparent over his objection.  The court did not find that father complied with his treatment plan or that he regained fitness.  *Cf. N.G.G.*, ¶¶ 18-19 (mother's entitlement to *Troxel* presumption was restored following adjudication when the juvenile court found that she had complied with her treatment plan and was able to safely parent the children).  Instead, the court found, with record support as discussed above, that father was unfit to parent the child.  Under these circumstances, father was not entitled to the *Troxel* presumption. *Id.* at ¶ 17.

¶ 17    In sum, the record supports the juvenile court's findings.  And based on those findings, the court's APR order was neither a misapplication of the law nor manifestly arbitrary, unreasonable, or unfair.  Thus, we perceive no abuse of discretion.  *See E.B.*, ¶ 14.

### III. Disposition

¶ 18 The judgment is affirmed.

JUDGE FREYRE and JUDGE SCHUTZ concur.